# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| BERNARD KISSINGER, | ) |
| Plaintiff, | ) )  ) |
| v. | ) ) Case No. 1:19-cv-1125 |
| PERFECT CHOICE EXTERIORS, LLC and MARINER FINANCE, LLC, | ) ) ) |
| Defendants. | ) ) |

## ORDER & OPINION

This matter is before the Court on Defendant's Motion to Compel Arbitration (Doc. 5). Plaintiff has responded (Doc. 7) and following an Order calling for supplemental briefing (Doc. 8) the parties have submitted supplemental briefs (Docs. 12, 15). The matter is therefore ripe for review.

### BACKGROUND

Weather events caused damage to Plaintiff Bernard Kissinger's residence in April 2017. (Doc. 1-1 at 3). Plaintiff contracted with Defendant Perfect Choice Exteriors, LLC, to repair the siding and roofing of his home by means of the Siding Contract.[1] (Doc. 1-1 at 3). Plaintiff alleges an agent of Defendant Perfect Choice represented to him that Defendant Perfect Choice would be able to convince Plaintiff's

---

[1] There are three contracts at issue. The Court refers to the documents attached to Plaintiff's Complaint as Exhibits A and B dated June 19, 2018 (Doc. 1-1 at 12-16) collectively as the "Siding Contract," the document attached as Exhibit A to Defendant Mariner Finance's memorandum dated August 23, 2018 (Doc. 6-1 at 5) as the "Roofing Contract," and the document attached as Exhibit B to that memorandum (Coc. 6-1 at 7-11) as the "Home Improvement Installment Contract."

insurance company to cover siding for a side of the house and a moisture barrier for the roof not included in the amount the insurance company approved to repair the damage initially. (Doc. 1-1 at 3-4). The work was completed in July 2018. (Doc. 1-1 at 4). According to Plaintiff, the total cost was $25,980.00, of which he paid $7,000.00 initially, $10,500.00 on August 20, 2018, and $2,000 on August 29, 2018, leaving a balance of $6,480.00 which he was unable to pay. (Doc. 1-1 at 4). His insurance did not aid in the increased payments.

The Complaint alleges Defendant Perfect Choice contacted Plaintiff on September 10, 2018, and informed him it needed further time to deal with his insurance. (Doc. 1-1 at 4-5). Defendant Perfect Choice then allegedly presented Plaintiff with the Home Improvement Installment Contract, telling him he needed to sign the contract to give Defendant Perfect Choice sixty more days to negotiate with the insurance company; Plaintiff alleges he was not informed it was a loan document. (Doc. 1-1 at 5). The completed Home Improvement Installment Contract states Plaintiff had purchased $8,480 of goods and services, and had paid a down payment of $2,000 with $6,480.00 outstanding. (Doc. 6-1 at 7). He was provided this amount on credit, but would pay it back in installments, with an additional 16.99%, for a total of $8,973.60 in addition to the already paid $2,000. (Doc. 6-1 at 7). It further states the work would occur between September 15, 2018 and September 18, 2019, with a delivery of goods on September 10, 2018. (Doc. 6-1 at 7). All finance charges would be waived if full payment was made within 90 days. (Doc. 6-1 at 8). The Home Improvement Installment Contract contains an arbitration clause. (Doc. 6-1 at 10).

The amounts in the Home Improvement Installment Contract—a total of $8,480 with $2,000 as a down payment—bear some relation to the amounts remaining on the Siding Contract; after August 20, 2018, Plaintiff had $8,480 remaining in payments and he paid $2,000 on August 29, 2018, according to his allegations. But the amounts are also reflected in the Roofing Contract, which purports to have been executed on August 23, 2018, for the installation of window trim. (Doc. 6-1 at 5). The Roofing Contract purports to be for $8,480 total with $2,000 due as a down payment, although that number purports to be a 40% down payment, with 30% due on the date work starts and the final 30% due on the date work is completed; on both lines, $6,480 is written. (Doc. 6-1 at 5).

On March 6, 2019, Plaintiff filed this action in state court alleging causes of action under the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, fraud, and the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (Doc. 1-1 at 1-10). Defendant Mariner Finance then removed the action to this Court. (Doc. 1).

## LEGAL STANDARD

The Federal Arbitration Act requires arbitration agreements be placed "on an equal footing with other contracts" and enforced "according to their terms"; nonetheless, they may be invalidated by generally applicable contract defenses. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); 9 U.S.C. § 2. A party seeking to enforce an arbitration clause may request a stay of an action pending arbitration and an order compelling arbitration. 9 U.S.C. §§ 3-4.

"The division of labor between courts and arbitrators is a perennial question in cases involving arbitration clauses." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010). Courts evaluate only the limited question of whether the arbitration agreement is valid, while a challenge to the whole of the contract is for the arbitrator to decide. *Id*. However, "the court must decide whether a contract exists before it decides whether to stay an action and order arbitration." *Id*. at 742. "If there is no contract there is to be no forced arbitration." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). State law governing the formation of contracts is binding with regard to the question of contract formation. *Id*.

## DISCUSSION

Plaintiff raises two issues with enforcing the arbitration clause. First, Plaintiff argues the contract containing an arbitration clause is not enforceable for lack of consideration. Second, he intimates there are issues with the signature and initials on the Home Improvement Installment Contract and suggests Defendant Mariner Finance must meet the burden of showing Plaintiff signed and initialed it.

### I. Lack of Consideration

In Plaintiff's view, the alleged benefit to Plaintiff was the home improvement, which had been completed prior to the signing of the Home Improvement Installment Contract. (Doc. 7 at 3). But his argument implicates issues for an arbitrator, not a court, assuming the clause is otherwise valid.

"Courts will not allow a party to unravel a contractual arbitration clause by arguing that the clause was part of a contract that is voidable. The party must show that the arbitration clause *itself* . . . is vitiated by fraud, or lack of consideration or

4

assent." *Harter v. Iowa Grain Co.*, 220 F.3d 544, 550 (7th Cir. 2000) (emphasis in original) (quoting *Colifax Envelope Corp. v. Local No. 458-3M, Chi. Graphic Commc'ns Int'l Union*, 20 F.3d 750, 754 (7th Cir. 1994)) (internal citations, quotation marks, and alterations omitted); *accord Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). Under Illinois law, a mutually binding arbitration clause may supply its own consideration. *See Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 625 (Ill. App. 2005). Thus, Plaintiff's claimed lack of consideration for the Home Improvement Installation Contract does not necessarily implicate the arbitration clause therein. Whether the Home Improvement Installation Contract as a whole was supported by consideration is question for the arbitrator; the Court does not consider its merits.[2]

## II. Signature Issues

The remainder of the dispute over Defendant Mariner Finance's motion cannot be resolved on the papers alone. Plaintiff is now contesting that he initialed the page of the Home Improvement Installation Contract containing the arbitration clause (Doc. 15 at 1), raising a very serious question as to whether he assented to have disputes resolved by arbitration. The Court notes this is consistent with the

---

[2] An arbitration clause which does not contain internal consideration may nonetheless be sufficiently supported where it is incorporated into another agreement which includes consideration. *Estep v. World Fin. Corp. of Ill.*, 735 F. Supp. 2d 1028, 1033 (C.D. Ill. 2010). But Plaintiff has skipped arguing that no internal consideration exists; while it is necessary that the overall agreement be unsupported by consideration for the Court to conclude the arbitration clause is invalid, it is not sufficient.

5

attachment to the Complaint of an unsigned contract missing the page on which the arbitration clause appears. (Doc 1-1 at 17-20).

An initial matter is the burden. Plaintiff cited *Sturgill v. Santander Consumer USA, Inc.*, 48 N.E.3d 759, 767 (Ill. App. 2016) for the proposition that "[t]he party seeking to compel arbitration has the burden to establish that the parties have a valid agreement to arbitrate." (Doc. 7 at 1-2). Defendant Mariner Finance counters there is a presumption of arbitrability that is difficult to rebut, citing *AT&T Technologies Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) and *United Steel, Paper and Forestry Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union v. TriMas Corp.*, 531 F.3d 531, 537 (7th Cir. 2008). (Doc. 12 at 2). But those cases—and that presumption—do not apply to the instant type of dispute. Instead, they concern disputes about the scope of the arbitration clause. As the Supreme Court explained in *AT&T Technologies*, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause" cannot cover that grievance. 745 U.S. at 650.

On the question of contract formation, however, the burden is determined by state law. *See Gibson*, 121 F.3d at 1130. And under Illinois law, it is the burden of the party seeking to compel arbitration to prove the agreement exists. *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121 (Ill. App. 2005). Plaintiff may hold Defendant Mariner Finance to that burden. The matter is therefore set for an evidentiary hearing on July 17, 2019, at 11:00 a.m.

## Conclusion

Defendant's Motion to Compel Arbitration (Doc. 5) is taken under advisement. The matter is therefore set for an evidentiary hearing on July 17, 2019, at 11:00 a.m. for the parties to present evidence on the issue of whether Plaintiff assented to the arbitration clause.

SO ORDERED.

Entered this 27th day of June 2019.

_s/ Joe B. McDade_
JOE BILLY McDADE
United States Senior District Judge
